Filed 7/14/26  B.G. v. Superior Court CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| B.G., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF SANTA BARBARA COUNTY, <br><br> Respondent; <br><br> SANTA BARBARA COUNTY CHILD WELFARE SERVICES, <br><br> Real Party in Interest. | 2d Juv. No. B353493 <br> (Super. Ct. Nos. 20JV00396-A, <br> 20JV00397-A, 20JV00398-A) <br> (Santa Barbara County) |

B.G. (petitioner/Mother) seeks review by extraordinary writ of the juvenile court's disposition order, which bypassed reunification services pursuant to Welfare and Institutions Code

section 361.5, subdivision (b)(13)[1] and set a selection and implementation hearing (§ 366.26) for mother's three children. Mother contends the trial court erred in bypassing her for services because she "did not resist treatment." We deny the petition.

*Factual and Procedural Background*

In January 2026, the Santa Barbara County Child Welfare Services (CWS) received a referral for mother's three children who were 8, 10, and 11 years old at the time. The children reported that mother punched them and verbally abused them when she was drunk. The children's appointed counsel in Family Court obtained a temporary restraining order barring contact between mother and the children.

When CWS spoke to the children, they confirmed that mother had been "emotionally and physically abus[ing]" them. Ma.Z. (age 10) told the social worker that mother had thrown her into an empty bathtub and leaned on her with mother's full weight. When Ma.Z. cried and told mother to stop, that it hurt, mother yelled that it "should hurt." Ma.Z. also stated that her sister, Mi.Z. (age 11), had " 'been beat with a bat' " " 'all over' " by mother. May.Z. (age 8) said mother "acts really crazy" when she drinks. Ma.Z. told CWS that if she were granted a wish, she would wish to remain with her substitute care provider because " 'she is safe.' " She said she did not wish to see her parents again.

Mother admitted that she had been " 'struggling with drinking' " and that it had been " 'an issue in the past.' " When

---

[1] All further statutory references are to the Welfare and Institutions Code.

2

CWS confronted mother with the allegation that she hit Mi.Z, with a bat, mother stated, " 'I don't recall the situation.' " Mother reported that she was presently sober, but mother's drug and alcohol test on January 23, 2026, came back positive for alcohol.

The family had a prior child welfare history, including two voluntary family maintenance cases, which were opened in 2016 and 2018 due to parents' alcohol use. In 2020, the children were placed into protective custody due to parents' alcohol abuse and domestic violence. In 2021, the case was terminated, with physical custody to father and shared legal custody.

The juvenile court conducted a detention hearing, found the petition stated a prima face case pursuant to section 300, and ordered the children be detained.[2]

CWS prepared a jurisdiction/disposition report, recommending that the children remain in out-of-home care, mother not receive family reunification services, and that the juvenile court set a section 366.26 hearing.

In its bypass assessment, CWS noted that mother has had multiple opportunities to address her substance/alcohol use through court-ordered treatment programs, including family reunification services, family drug treatment court, and drug treatment services, but could not maintain sobriety when stressful situations arose in her life. Although mother acknowledged how her alcohol use has affected her children and was again enrolled in treatment, the department noted that mother was abusing substances until the children were detained.

In March 2026, the juvenile court conducted a contested disposition hearing. Mother called several character witnesses,

---

[2] Father's whereabouts are unknown, and CWS's continued efforts to locate him have been unsuccessful.

including her Alcoholics Anonymous (AA) sponsor, her work colleague who was also her cousin, and a friend from church.

Mother's AA sponsor testified that mother was taking her sobriety seriously, was diligent in her participation, and was on step three of the 12-step process.

Mother's cousin and work colleague testified that she had known mother for approximately six years. She had seen mother interact with her children more than 15 times over the course of five years. She had never seen mother intoxicated or yell at the children. The children did not seem to be in distress when they were with mother.

Mother's friend from church testified that she had known mother for three years and had seen mother with her children approximately 50 times. Mother's friend said she had never seen mother intoxicated or yell at the children, and the children did not seem scared around their mother.

The social worker testified, consistent with the jurisdiction/disposition report, that mother completed treatment in the past and was sober for a coupe of years. Things were good when she was sober, but mother would start drinking again.

Mother testified that after the children were detained, she began attending alcohol and drug treatment through CADA (Council on Alcoholism and Drug Abuse). She also started going to AA right away and attended at least one meeting daily. Mother testified that she had been in the program before but left because she was involved in her church and thought that was enough. She was sober for about two and a half years after the prior dependency matter but "stressors," including relationship, financial, and housing issues caused her to relapse.

Mother testified that she started drinking again in July 2025, a little over six months before the children were detained. Mother explained that "[i]t started off with smoking marijuana and led into the drinking." She acknowledged that she learned about triggers and the steps to take if she relapsed, but she did not take those steps. Instead, she "mentioned it to a couple of [her] church family members," that she "was stressed and . . . was kind of struggling with that a little bit," but "didn't do anything other than that." She did not reach out to her sponsor.

Mother admitted she was not nice to the children when she was drinking. She said moving forward, she would have a close family friend check in with her daily and take the girls if she got "off track."

On cross examination, mother confirmed that she had made similar remarks to CWS in an interview during the prior dependency action about how she would do better next time, including developing a relapse prevention plan, reaching out to her support system, and attending AA meetings. She explained this time was different because she had a better support system than she has had in the past.

CWS argued that mother fell within section 361.5, subdivision (b)(13) because this was not a relapse, but "a return to consistent habitual substance use." CWS further argued that mother's failure to employ the skills learned in treatment or reach out to her sobriety support system was evidence of resistance to treatment. CWS argued the evidence showed the futility in providing mother reunification services under these circumstances.

Mother's counsel argued that the evidence points to relapse and that treatment would not be fruitless. Counsel argued that if

5

the court found mother did resist treatment, it should order reunification services in the children's best interests.

After listening to testimony and hearing argument, the juvenile court found that this was not a mere relapse, but rose to the level of resistance under the bypass statute. It further found that it was not in the children's best interests to provide reunification services. The court therefore ordered services bypassed for mother and set the section 366.26 hearing.

*Discussion*

Mother contends the juvenile court erred in bypassing her for reunification services because she did not "resist treatment."

Generally, the juvenile court is required to provide reunification services "whenever a child is removed from a parent's or guardian's custody." (§ 361.5, subd. (a).) However, reunification services need not be provided to a parent when the court finds, by clear and convincing evidence, that one of several designated situations exists. (§ 361, subd. (b).) For example, the juvenile court may bypass reunification services when a parent "has a history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior court-ordered treatment for this problem during a three-year period immediately prior to the filing of the petition." (§ 361.5, subd. (b)(13).)

We review an order denying reunification services pursuant to section 361.5, subdivision (b) for substantial evidence. (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 96.) Under that standard, "we inquire whether the evidence, contradicted or uncontradicted, supports the [juvenile] court's determination. We resolve all conflicts in support of the determination, indulge in all legitimate inferences to uphold the findings and may not

6

substitute our deductions for those of the juvenile court."
(*Georgeanne G. v. Superior Court* (2020) 53 Cal.App.5th 856,
865.)

### *Substantial Evidence Supports the Juvenile Court's Order Bypassing Reunification Services*

The contested issue at the disposition hearing is whether
mother "resisted treatment" or merely "relapsed."

*In re B.E.* (2020) 46 Cal.App.5th 932 (*B.E.*), defined the
term "resisted" to mean "active resistance," not "passive
resistance." (*Id.*, at p. 941.) The Legislature subsequently
amended section 361.5, subdivision (b)(13) to explicitly adopt the
*B.E.* court's interpretation. That statute now states: "For
purposes of this paragraph, 'resisted' means the parent or
guardian refused to participate meaningfully in a prior court-
ordered drug or alcohol treatment program and does not include
'passive resistance,' as described in [*B.E.*, *supra*,] 46 Cal.App.5th
932." (§ 361.5, subd. (b)(13).)

CWS specifically addressed the *B.E.* case during argument
and distinguished it from the facts in this case. In *B.E.*, the
parents had a history of drug abuse, treatment, and relapse.
Their children were removed on three separate occasions. The
parents successfully reunified in the first two dependency cases.
At the time the children were detained for a third time, the
parents had relapsed but followed through with a safety plan in
which they left the children with family friends and enrolled in
treatment. (*B.E.*, *supra*, 46 Cal.App.5th at pp. 935-937, 945.)
The court of appeal affirmed the juvenile court's finding that the
parents did not "resist" treatment, but had simply "relapsed."
(*Id.* at p. 945.)

Here, by contrast, mother began to use substances slowly,
first marijuana, then gradually increasing amounts of alcohol

until it was a daily occurrence. She physically and verbally abused the children due to her drinking until they were detained from her. At no time did mother employ a safety plan or take any action to protect the children. Although mother has expressed her renewed commitment to sobriety and promises to use the tools she learned in treatment to protect the children, she made identical commitments in 2020 when her children were previously detained.

Relapse is a normal part of recovery. "[A] relapsed parent is far from hopeless. It is decidedly *not* fruitless to offer services to a parent who genuinely made an effort to achieve sobriety but slipped up on the road to recovery." (*In re B.E.*, *supra*, 46 Cal.App.5th at p. 941.) But mother did not just "slip up" on her road to recovery. As the juvenile court found, given mother's "progressive continuation of use of alcohol after the programming that she's had," this was "[not] just a mere relapse."

On these facts, substantial evidence supports the juvenile court's conclusion that bypass was proper.

### No Abuse of Discretion in Finding Services
### Not in Children's Best Interests

Mother's counsel argued that if the bypass provision applied, then the juvenile court should order reunification services based on the children's bests interests.

Section 361.5, subdivision (c) provides, "The court shall not order reunification for a parent or guardian described in paragraph . . . (13) . . . of subdivision (b) unless the court finds, by clear and convincing and convincing evidence, that reunification is in the best interest of the child." (*Id.*, subd. (c)(2).) It is the parent's burden to "'affirmatively show that reunification would be in the best interest' of the child." (*Mardardo F. v. Superior Court* (2008) 164 Cal.App.4th 481, 492.)

8

In determining whether services would be in the best interest of the children, relevant factors include the parent's current efforts and fitness as well as the parent's history, the gravity of the problem that led to the dependency, the strength of the bonds between the child and both parent and caretaker, and the child's need for stability and continuity. (*In re Ethan N.* (2004) 122 Cal.App.4th 55, 66-67.) We review a juvenile court's best interests determination for abuse of discretion. (*In re A.E.* (2019) 38 Cal.App.5th 1124, 1140-1141.)

Here, the record reflects that mother physically and verbally abused the children when she was drinking. Mi.Z. described how mother would hit the children and call them "stupid." Ma.Z. said if she could have one wish, she would wish to stay with her current caretaker and did not want to see either of her parents again. May.Z. shared similar feelings. She worried mother would come to the resource home and take them. When she was with mother, she worried the police would come to their home and take her away.

In its oral ruling, the juvenile court spoke at some length about the damage done to the children and their need for stability. It determined that it could not find "under any circumstances by clear and convincing evidence that it would be in the best interests of the children" to order reunification services.

On this record, mother cannot show that the juvenile court abused its discretion.

### Disposition

The petition is denied.

NOT TO BE PUBLISHED.

YEGAN, Acting P. J.

We concur:


BALTODANO, J.


CODY, J.

Gustavo E. Lavayen, Judge

Superior Court County of Santa Barbara

_____

B.G., in pro. per., for petitioner.

No appearance for Respondent.

Rachel Van Mullem, County Counsel, Lisa A. Rothstein, Senior Deputy County Counsel, for Real Party in Interest.